### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| G.G. *et al.*, | : | | |
| *A minor, by his parents and next friends,* | : | | |
| *Richard and Victoria Gersten,* | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 12-229 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 7, 9 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

#### GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; DENYING THE DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The plaintiffs here are G.G., a minor child who is eligible to receive special education services, and his parents. G.G. attended a public school in the District of Columbia through the second grade, but after he was diagnosed with Asperger Syndrome, his parents placed him in a non-public school in Maryland. His parents subsequently filed a due process complaint against the District of Columbia Public Schools ("the District" or "DCPS"). The complaint alleged that the District had not timely evaluated or made an eligibility determination for G.G., that it had not timely created an Individualized Education Program ("IEP") for him, and that it had thereby denied G.G. a free and appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. During the ensuing due process hearing, a hearing officer held that the District had violated the IDEA by failing to make a timely evaluation and determination of G.G.'s eligibility for special education services. The hearing officer further held, however, that the District still had time to develop an IEP, and that it had

therefore not denied G.G. a FAPE.  The hearing officer also held that G.G.'s placement at the non-public school was inappropriate, as was any reimbursement for his attendance there.  The hearing officer thus ordered that within ten days of receiving the hearing on determination ("HOD"), the District would find G.G. eligible for special education and related services as a child with autism, which would trigger the creation of an IEP.

G.G. and his parents now appeal the hearing officer's decision, contending that some aspects of the holding should be vacated.  The parties have filed cross-motions for summary judgment.  Because the District failed to timely evaluate and make an eligibility determination for G.G., and thus effectively deprived him of a timely IEP, G.G. was denied a FAPE and the plaintiffs are entitled to partial reimbursement for his placement at a non-public school.  The Court thus grants in part and denies in part the plaintiffs' motion, and denies the defendant's cross-motion.

## II.  FACTUAL & PROCEDURAL BACKGROUND

G.G. is a third grade student who has been diagnosed with Asperger syndrome, severe anxiety, and other issues that place him in need of special education services.  Pls.' Statement of Material Facts ("Pls.' Stmt.") ¶¶ 1-2.  His parents first grew concerned with his development when he was in preschool, when they began to notice that he was inflexible and that he had developed social problems with anger and frustration.  *Id.* ¶ 3.  G.G.'s parents met with his preschool teachers to express their concerns, and enrolled him in private therapy.  *Id.* ¶ 4.  When G.G. entered kindergarten, he attended Horace Mann Elementary School, a public school in the District of Columbia, where he remained enrolled through the second grade.  *Id.* ¶ 5.  During the first grade, G.G. demonstrated serious anxiety, including clenching his fists and teeth,

continually repeating nonsensical phrases, and banging his head on his desk. *Id.* ¶¶ 6-7. He also

had significant problems with handwriting and with interacting with his classmates. *Id.* ¶ 8.

Despite these difficulties, by the end of the first grade, nobody from the District suggested

evaluating G.G. *Id.* ¶ 9.

As indicated above, G.G. was enrolled in the second grade at Horace Mann during the

2010-11 school year. *Id.* ¶ 10. His classroom had 27 students. *Id.* ¶ 11. G.G.'s parents

remained concerned about his behavior, noting that it had worsened from previous years. *Id.* ¶

12. He became increasingly withdrawn and escaped to the restroom multiple times per week, to

avoid being in the classroom. *Id.* ¶ 13. His parents observed that he underwent "commensurate

levels of disabling anxiety," including banging his head, developing tics, and chewing on his

shirt to the point that it was covered in holes and saliva.[1] *Id.* ¶ 14. Because of their growing

concerns, G.G.'s parents requested a meeting with his school principal. *Id.* ¶ 15. G.G.'s parents

met with her and two others from the school during the spring of 2011, where the school staff did

not offer any insight as to what was happening to G.G., but where everyone agreed to seek out a

neuropsychological examination. *Id.* ¶ 17. G.G. underwent this evaluation in March of 2011 at

Children's National Medical Center, where he was diagnosed with Asperger Syndrome. *Id.* ¶ 19.

During the summer of 2011, G.G.'s parents began researching programs that address this

condition, and discovered the Model Asperger Program ("MAP") at Ivymount, a non-public

school in Maryland. *Id.* ¶ 23. The MAP is targeted toward working with students who have

Asperger Syndrome. *Id.* ¶ 24. On June 13, 2011, G.G.'s parents sent a letter through counsel to

Horace Mann's principal, requesting that a meeting be scheduled to develop an IEP for their son.

---

[1] G.G.'s second grade teacher testified that although she saw him chew on his shirt, she did not recall seeing holes in such shirts or an entire shirt being soaked, unlike what G.G.'s mother described during her testimony. *See* HOD at 8 n.8; Siepiola Testimony, Administrative Record ("A.R.") at 550; Gersten Testimony, A.R. at 496. The Court deems these differences in testimony immaterial, however, as did the hearing officer below. *See* HOD at 8 n.8.

*Id.* ¶ 25.  On June 21, 2011, the principal responded, requesting that they come in for an informal meeting.  *Id.* ¶ 26.  G.G.'s parents agreed to attend the informal meeting, but again inquired about scheduling an IEP meeting.  *Id.* ¶ 27.  During the June 23 meeting, the principal focused on the benefits of Section 504 plans, emphasizing the ease and speed with which they could be completed, compared to the development of an IEP.  *Id.* ¶ 28.  Though G.G.'s parents were intent on proceeding with the IEP process, they agreed to consider a 504 plan, as well, and stated that they would follow up with the principal the next day.  *Id.* ¶ 29.  They also offered to give the principal copies of G.G.'s evaluations, but she indicated that they were not needed at that time.  *Id.* ¶ 30.  The next day, G.G.'s mother emailed the principal, again requesting that the District continue with the IEP process.  *Id.* ¶ 31.  G.G.'s parents received no follow-up correspondence from the District.

On August 4, 2011, G.G.'s mother emailed the principal, informing her that G.G. had been accepted into the MAP, and that he would be enrolled there at public expense during the fall of 2011.  *Id.* ¶ 33.  G.G.'s mother also repeated her intention for the District to continue with the IEP process.  *Id.*  On August 17, the principal responded, informing G.G.'s parents that for the District to proceed with the special education process, G.G. would have to re-enroll at his neighborhood DCPS school, Stoddert Elementary School.  *Id.* ¶ 34.  When G.G.'s parents attempted to re-enroll him there, however, the school refused to accept the forms, and instead directed them to DCPS's Private and Religious Office ("PRO").  *Id.* ¶ 37.  His parents subsequently submitted the requisite forms to this office, *id.* ¶ 38, but heard nothing from the District regarding scheduling evaluations or the development of an IEP, *id.* ¶ 39.

G.G.'s parents enrolled him in the MAP at Ivymount in August of 2011, *id.* ¶ 46, and filed a due process complaint on October 27, 2011, *id.* ¶ 39.  The complaint alleged that the

District had denied G.G. a FAPE by failing to timely evaluate and provide him with an IEP.  *Id.*

¶ 53.  On November 4, G.G.'s parents received a letter of invitation from the District to attend an

eligibility meeting.  *Id.* ¶ 40.  On November 15, they attended a PRO meeting to review G.G.'s

evaluations, where it was determined that additional assessments were necessary to determine

G.G.'s eligibility for special education services.  *Id.* ¶ 41.  At a November 18 meeting, the

District requested his parents' consent to evaluate G.G. for special education eligibility.  *Id.* ¶ 42.

On December 5, the District issued a Prior Written Notice, proposing that G.G. be observed at

the MAP, to obtain additional information to determine eligibility.  *Id.* ¶ 43.

By the December 16 due process hearing, the District had not observed or evaluated G.G.

at Ivymount, nor had it contacted anybody at the MAP or at Ivymount to arrange to observe him.

*Id.* ¶ 45.  Meanwhile, G.G. attended school at the MAP, where six staff members and three

service providers worked with his class of nine students.  *Id.* ¶¶ 47-8.  The MAP developed an

IEP for G.G. in October of 2011.  *Id.* ¶ 49.  G.G. made much progress at Ivymount; his anxiety

was significantly reduced, and he progressed academically.  *Id.* ¶ 52.

The due process hearing was held on December 16 and 19.  HOD at 2.  The hearing

officer determined that the District had violated the IDEA by failing to make a timely evaluation

of G.G., as well as a timely determination of his eligibility for special education and related

services as a child with disability under the IDEA.  *Id.* at 4, 39, 42.  The hearing officer

concluded, however, that because the deadline for creating an IEP and proposing an appropriate

special education program for G.G. had not yet passed when the parents filed the due process

complaint, the District had not denied him a FAPE.  *Id.* at 39.  The hearing officer also held that

G.G.'s prospective placement in the MAP was not appropriate because it was not the Least

Restrictive Environment ("LRE") for him, and that he was not entitled to reimbursement for his

enrollment there.  *Id.*  In addition, the District was ordered to convene a multi-disciplinary

("MDT") or IEP team within ten days of receiving the HOD, and the team was required to make

a finding that the student was eligible for special education and related services as a child with

autism.  *Id.* at 56-57.  The HOD stated that the team could consider whether G.G. had other

learning disabilities, but that this consideration should not delay finding him eligible based on his

autism.  *Id.* at 57.  The hearing officer further noted that finding G.G. eligible for special

education and related services would trigger the requirement of developing an IEP and offering

him a FAPE.  *Id.* at 56.

The plaintiffs have now filed this action appealing the HOD, asserting that part of the

decision should be vacated.  Specifically, the plaintiffs contend that the Court should determine

that G.G. was not timely evaluated, that he did not receive a timely eligibility determination or

IEP, that he was denied a FAPE, that he should be placed in the MAP program, and that the

plaintiffs should be reimbursed for enrolling him there.  The parties have filed cross-motions for

summary judgment.  The Court now turns to the parties' arguments and to the applicable legal

standard.


## III.  ANALYSIS

### A.  Standard of Review for Administrative Decisions Under the IDEA

The IDEA was enacted "to ensure that all children with disabilities have available to

them a free appropriate public education ["FAPE"] that emphasizes special education and related

services designed to meet their unique needs and prepare them for further education,

employment, and independent living . . . ."  20 U.S.C. § 1400(d)(1)(A).  A "free appropriate

public education" must "sufficient[ly] confer some educational benefit upon the [] child."  *Bd. of*

*Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200 (1982).  If a parent or

guardian objects to the identification, evaluation, or educational placement of the student, or the

provision of a FAPE, 20 U.S.C. § 1415(b)(6)(A), the parent or guardian may seek an impartial

due process hearing, *id.* § 1415(f)(1).  This involves the parent or guardian filing a due process

complaint, and then an independent hearing officer determining during the hearing whether the

student received a free appropriate public education.  *See id.* § 1415(f)(3)(E)(i).  After the

hearing, "[a]ny party aggrieved by the findings and decision . . . shall have the right to bring a

civil action with respect to the complaint presented . . . ." *Id.* § 1415(i)(2)(A).

     Although seeking judicial review of an administrative agency's decision by way of a

summary judgment motion "is permissible under the IDEA, it is not a true summary judgment

procedure.  Instead, the district court essentially conduct[s] a bench trial based on a stipulated

record." *L.R.L. ex rel. Lomax v. District of Columbia*, 2012 WL 4789532, at *3 (quoting *Ojai*

*Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993)).  As no new evidence has been

submitted here, the Court will treat the parties' cross-motions for summary judgment as motions

for judgment based on the administrative record.  *See S.B. v. District of Columbia*, 783 F. Supp.

2d 44, 50 (D.D.C. 2011).  In other words, rather than applying the typical standard applicable to

a summary judgment motion, which may be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law," FED.R.CIV.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), the court

in an IDEA case conducts a summary adjudication, *Phillips v. District of Columbia,* 736 F. Supp.

2d 240, 246 (D.D.C. 2010) ("If no additional evidence is introduced by the parties in a civil suit

seeking review of an administrative decision, a motion for summary judgment operates as a

motion for judgment based on the evidence comprising the record.") (alterations and internal

quotation marks omitted) (quoting *Thomas v. District of Columbia*, 407 F. Supp. 2d 102, 109 (D.D.C.2005)).

In evaluating a hearing officer's decision under the IDEA, the court reviews the administrative record and bases its decision on the preponderance of the evidence, where it grants relief as deemed appropriate.  20 U.S.C. § 1415(i)(2)(C)(iii).  The hearing officer's decision is afforded "less deference than is conventional in administrative proceedings."  *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005).  Yet while a court must "engage in a more rigorous review of the decision below than is typical in administrative cases," it should "nevertheless accord the [h]earing [o]fficer's decision due weight[,]" and should not substitute its own view of sound educational policy for that of the hearing officer.[2]  *See Rowley*, 458 U.S. at 206.  The burden of proof is with the party challenging the administrative determination, who must "at least take on the burden of persuading the [C]ourt that the hearing officer was wrong."  *Reid*, 401 F.3d at 521.

**B.  The District Did Not Timely Evaluate and Make an Eligibility Determination for G.G. and Thus Denied Him a FAPE**

As a preliminary matter, neither party contests the hearing officer's conclusion that the District violated the IDEA by failing to timely evaluate G.G., and by failing to timely determine his eligibility for special education services.  Def.'s Mot. at 10; *see generally* Pls.' Mot.  The plaintiffs assert, however, that the failure to timely evaluate G.G. and make an eligibility determination also constituted a denial of a FAPE, and that the hearing officer erred in determining otherwise.  Pls.' Mot. at 20.  Further, the plaintiffs contend that the hearing officer

---

[2]     The plaintiffs contend that because the hearing officer's findings were "not regularly made," due weight should not be given to such findings.  Pls.' Mot. at 12-13.  The plaintiffs have not made out a compelling reason to abandon this standard, however.  Moreover, the plaintiffs' argument is moot, as applying the prevailing standard, without alteration, renders the Court's ultimate determination in their favor anyway.

erred in holding that the District still had time to create an IEP for G.G. at the time the due process complaint was filed. *Id.* at 19-20. The plaintiffs claim that instead, the period to create an IEP had run, and that the District thereby failed to timely create an IEP, which also denied G.G. a FAPE. *Id.*

By contrast, the District argues in its cross-motion that even though it violated the IDEA by not making a timely evaluation and eligibility determination, that this did not deny G.G. a FAPE. Def.'s Mot. at 10-11. The District also contends that it did not fail to timely make an IEP for G.G., and thus did not deny him a FAPE in this manner, either. *Id.* at 11-12. Specifically, the District argues that had it evaluated G.G. and made an eligibility determination, it would have had an additional 30 days to develop an IEP. *Id.* Because it did not make an evaluation or eligibility determination by the October 11, 2011 deadline, the District asserts, the 30 days to develop an IEP began to run on that deadline. *Id.* at 12. Thus, the District contends, it would have had until November 10, 2011 to develop an IEP for G.G., after the October 27 due process complaint was filed. *Id.*

This Circuit has held that under the IDEA, states, as well as the District of Columbia, that receive federal educational assistance must establish policies and procedures to ensure that a FAPE is made available to disabled children. *Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005). The District may not "await parental demands before providing special instruction," but must "[i]nstead . . . ensure that '[a]ll children with disabilities residing in the [District] . . . who are in need of special education and related services are identified, located, and evaluated.'" *Scott v. District of Columbia*, 2006 WL 1102839, at *8 (D.D.C. Mar. 31, 2006) (citing *id.*); 20 U.S.C. § 1412(a)(3). "As soon as a child is identified as a potential candidate for services, DCPS has the duty to locate that child and complete the evaluation process." *Long v.*

*District of Columbia*, 780 F. Supp. 2d 49, 56 (D.D.C. 2011).  The District must conduct initial evaluations to determine the child's eligibility for special education services "within 120 days from the date that the student was referred [to DCPS] for an evaluation or assessment."  *Id.* (quoting D.C. Code § 38–2561.02(a)).  Once the initial evaluation has been made, the District must develop an IEP within 30 days.  *Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 114 (D.D.C. 2011) (citing 34 C.F.R. § 300.343(b)(2)).

In this case, the hearing officer determined that G.G. was referred to the District for an assessment on June 13, 2011, the date that his parents' counsel sent his school principal a letter requesting an IEP meeting.  HOD at 40.  The 120-day period therefore began to run on this date, the hearing officer held, such that the District had until October 11, 2011 to evaluate G.G. and to make an eligibility determination.  *Id.*  The Court agrees.  As noted previously, "DCPS' Child Find obligations [to evaluate the student] are triggered 'as soon as a child is identified as a potential candidate for services,'" *Long*, 780 F. Supp. 2d at 57 (citing *N.G. v. District of Columbia*, 556 F. Supp. 2d 11, 16 (D.D.C. 2011)).  Thus, G.G.'s parents formally bringing these behavioral concerns to the school's attention on June 13 functioned as G.G.'s referral to the District for an evaluation or assessment.  *Integrated Design and Elec. Acad. Pub. Charter Sch. v. McKinley*, 570 F. Supp. 2d 28, 34 (D.D.C. 2008) (a school is obligated to evaluate a student once that student is "*suspected* of having a disability").

The hearing officer further held that while failing to evaluate G.G. within the requisite 120-day period procedurally violated the IDEA, it did not affect G.G.'s right to a FAPE.  HOD at 44.  There appears to be no basis for this finding, though, as the "[f]ailure to locate and evaluate a potentially disabled child" does, in itself, "constitute[] a denial of a FAPE."  *N.G.*, 556 F. Supp. 2d at 16; *District of Columbia v. Abramson,* 493 F. Supp. 2d 80, 85 (D.D.C. 2007) (failure to

complete evaluation constituted denial of a FAPE); *Long*, 780 F. Supp. 2d at 56.  Delaying the evaluation of G.G.'s special education eligibility deprived him of access to special education services.  The District "default[ing]" on its "statutory obligations" in this manner therefore denied G.G. of his substantive right to a FAPE.  *N.G.*, 556 F. Supp. 2d at 39.

In addition, the hearing officer determined that if the District had evaluated G.G. by the October 11, 2011 deadline, it would have had an additional 30 days from then to develop an IEP for him, or until November 11, 2011.  HOD at 47.  The hearing officer held that the plaintiffs were therefore premature in filing their October 27 due process complaint before this November deadline, as the District still would have had time to develop an IEP at that point.  *Id.* at 47-48.  Yet the District does not contend that an IEP was ever in the process of being completed, by the November deadline or beyond.  *See generally* Def.'s Mot.  The hearing officer's conclusion is thus illogical.  On October 27 when the due process complaint was filed, the District had not yet evaluated G.G. or determined his eligibility for services.  Without such a determination, no IEP would be created.  Consequently, it would have been futile for the plaintiffs to wait until November 11 because no IEP was going to be completed, or even begun, until an evaluation was completed and an eligibility determination made.  And, in fact, as of the time of the due process hearing in December, the District had still not begun an evaluation or made an eligibility determination.  Indeed, it is ironic that the hearing officer both blamed the plaintiffs for *waiting too long* to request an evaluation from the District, *see* HOD at 39, and for *prematurely* requesting a hearing, *id.* at 47-48.

Instead, because an evaluation and eligibility determination is a prerequisite to preparing an IEP, the District's failure to timely evaluate G.G. or determine his eligibility by the October 11 deadline ensured that he would not receive a timely IEP, thus, denying him a FAPE.  *N.B. v.*

11

*Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1209 (9th Cir. 2008) (school district's failure to adequately evaluate student was a procedural error that effectively prevented development of an IEP "reasonably calculated to provide [student] with a meaningful educational benefit," and thus constituted denial of a FAPE); *K.I. ex. rel. Jennie I. v. Montgomery Pub. Sch.*, 895 F. Supp. 2d 1283, 1294 (M.D. Ala. 2011) (school district falling short of properly evaluating student procedurally violated the IDEA and effectively meant the failure to provide an adequate IEP, thereby denying her of a FAPE); *Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 79 (D.D.C. 2003) (failure to provide a timely eligibility determination creates a substantive harm and constitutes a denial of a FAPE); *Bush ex. rel. A.H. v. District of Columbia*, 579 F. Supp. 2d 22, 32 (D.D.C. 2008). Failure to develop an IEP is essentially a denial of a FAPE. "When the school district violates the procedural requirements of [the] IDEA by failing to develop an IEP[,] . . . the purposes of the Act are not served[,]" and the child is denied a FAPE. *Eley v. District of Columbia*, 2012 WL 3656471, at *7 (D.D.C. Aug. 24, 2012); *A.G. v. District of Columbia*, 794 F. Supp. 2d 133, 138 (D.D.C. 2011) ("DCPS denied [the student] a FAPE when it failed to provide him with an IEP."); *Long*, 780 F. Supp. 2d at 57 (depriving a child of an IEP "harm[s]" and denies him a FAPE). The hearing officer therefore erred in finding that the District did not deny G.G. a FAPE by failing to timely evaluate and make an eligibility determination for him, as this denied him a FAPE both in itself, and by effectively barring him from receiving a timely IEP. *See Scott*, 2006 WL 1102839, at *9 (holding that the hearing officer erred when finding that the District had not denied the student a FAPE by failing to timely evaluate him, and to timely develop an IEP for him); *Eley*, 2012 WL 3656471, at *7.

**C.  G.G.'s Parents are Entitled to Reimbursement for His Placement in the MAP from the Time that an Eligibility Determination Should Have Been Made Until an IEP is Completed**

The plaintiffs further contend that the Court should vacate the hearing officer's determination that they were not entitled to reimbursement for placing G.G. in the MAP program.  Pls.' Mot. at 32.   The hearing officer held that "even if [G.G.] had been denied a FAPE, an Order requiring [the District] to reimburse [the plaintiffs] for tuition and fees . . . would not be equitable because the timing of [the p]arents' referral of [G.G.] for evaluation effectively precluded the provision of a FAPE."  HOD at 39.  As noted above, however, this reasoning is faulty.  The obligation to identify and evaluate G.G. did not fall on his parents, but instead, on the District, as it is "require[d] to identify and evaluate" students who may be in need of special education services, "whether or not [the] parents have made any request." *Scott*, 2006 WL 1102839, at *7.  Further, as this Court has already determined, the District was at fault for denying G.G. a FAPE.  There is no indication that his parents were responsible for or even contributed to this deprivation, and in fact, it is evident from the record that any efforts they made to timely evaluate and place G.G. were frustrated by the District.

Thus, as in this case, if the school fails to timely evaluate and produce an IEP for the student, "the parent does not have to wait for DCPS but may select a placement and be reimbursed." *Eley*, 2012 WL 3656471, at *9; *N.S. ex rel. Stein v. District of Columbia,* 709 F. Supp. 2d 57, 72 (D.D.C. 2010); *District of Columbia v. Abramson*, 493 F. Supp. 2d 80, 86–87 (D.D.C. 2007); *Block v. District of Columbia*, 748 F. Supp. 891, 897 (D.D.C.1990) (ordering reimbursement for private school placement when DCPS failed to properly evaluate the student and formulate an appropriate IEP).  Indeed, "[i]f the parents of a child with a disability . . . enroll the student in a private . . . school," the court "may require the agency to reimburse the parents for the cost of that enrollment if th[e] court . . . finds that the agency had not made a [FAPE]

available to the child in a timely manner . . . ."  20 U.S.C. § 1412(a)(10)(C)(ii); *Florence Cnty.*

*Sch. Dist.*, 510 U.S. 7, 15-16 (1993) ("once a court holds that the public placement violated [the]

IDEA, it is authorized to 'grant such relief as the court determines is appropriate[,]' 20 U.S.C. §

1415(e)(2)[,]" such that "'equitable considerations are relevant in fashioning relief,' [*Sch. Cmty.*

*of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 374 (2005),] and the court enjoys 'broad

discretion' in so doing, *id.* at 369").

      This is particularly true here because the District has never contended that Horace Mann,

G.G.'s prior public school, was an adequate placement, nor has the District ever suggested an

alternative placement within DCPS beyond a theoretical placement elicited during questioning at

the hearing that is unsupported by expert or lay testimony.  *See* Def.'s Reply at 5.  And all parties

appear to be in agreement that G.G. has benefited from his attendance in the MAP program.  Had

the District offered G.G. a public school placement that was adequately suited to his needs

before the due process hearing, perhaps the outcome of this case would have been different.  But

that is not the case before this Court.  The plaintiffs are thus entitled to reimbursement, as the

District has not convincingly articulated an alternative placement within DCPS that would be

appropriate.

      Consequently, because the District did not make a timely eligibility determination for

G.G., it must reimburse the plaintiffs "from the date that the eligibility determination should

have been made . . . until such time as the student is provided with an appropriate placement."

*Abramson*, 493 F. Supp. 2d at 86–87 (internal citation omitted) (citing *Holland v. District of*

*Columbia*, 71 F.3d 417, 420 n. 3 (D.C. Cir. 1995) *and Blackman*, 277 F. Supp. 2d at 84-85).  In

other words, the District is required to reimburse the plaintiffs from October 11, 2011 through

the date that G.G.'s IEP was presumably completed.  *Alfono v. District of Columbia*, 422 F. Supp. 2d 1, 5 (D.D.C. 2006) (ordering reimbursement until the student's IEP was completed).

Finally, the plaintiffs contend that the Court should order that G.G. be placed at the MAP. Pls.' Mot. at 38.  As in this case, "while there has been an actionable violation of [the] IDEA, the consideration of prospective placement is frustrated without" an IEP and an accompanying determined placement for G.G.  *Eley*, 2012 WL 3656471, at *11.  Given the hearing officer's order to convene an MDT or IEP meeting within ten days of receiving his decision, an IEP has likely been created.  Prospective placement at the MAP should thus not be addressed by this Court, but instead, by the MDT or IEP team, as soon as practicable.  *See id.*  To the extent that the plaintiffs are dissatisfied with the District's proposed placement, they must bring a new and separate action.

Accordingly, because the hearing officer erred in determining that the District did not deny G.G. a FAPE, and that the plaintiffs were not entitled to any reimbursement for their private school placement, these holdings in his hearing on decision are vacated.  The remaining aspects of the hearing officer's decision will not be disturbed, including his determination that the District violated the IDEA by failing to timely evaluate G.G. and determine his eligibility for special education services.[3]

---

[3]     The plaintiffs also assert that because the defendant's Answer to the Complaint responds to 32 allegations by stating that the defendant "lacks knowledge and information sufficient to enable it to respond," rather than declaring an unambiguous admission or denial, the Complaint should be deemed admitted as true. Pls.' Mot. at 14. Although the District's tactics are not to be commended, in actions involving motions for summary judgment based on an administrative record, the answer does not play a critical role in narrowing the issues.  In fact, the District could have extended the period of time to file its motion for summary judgment and not filed an answer at all.  Consequently, the plaintiffs are not prejudiced by the District's inadequate answer.  But, regardless, because the plaintiffs are granted their requested relief on other grounds, the Court need not reach this argument.

**IV.  CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the plaintiffs' motion for summary judgment and denies the defendant's cross-motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 20th day of February, 2013.

RUDOLPH CONTRERAS
United States District Judge